Mr. Byer, can you see alright from that angle? Yes. Okay. Mr. Bennett, when you're ready. Thank you, your honors. My name is James Todd Bennett and I'm representing the petitioner Wendell Javier-Ratuta. I'd like to reserve two minutes of my time for rebuttal. Okay. I believe there's two issues in front of the court here this morning in this particular petition for review proceeding. First issue is whether this conviction record is in and of itself meets the would-be standard and the statutory standard of clear and convincing evidence. If the documents involved involve a complaint and what appears to be some sort of minute order, they may be admissible since they are certified, but the question is does it meet the burden and should it receive the weight to prove by clear and convincing evidence that Mr. Ratuta was convicted as alleged in the complaint. Secondly, even if it were, the record is ambiguous as to any kind of sentence and I believe in the Post-Illegal Immigration Reform and Immigrant Responsibility Act amendments to the Immigration and Nationality Act, you still have to be able to prove a sentence component or some sort of imposition of fine, et cetera. And I don't think matter of Cabrera really fully disposes of that issue either in this case. I'd like to address the first issue initially. As the court's well aware, the standard is under would-be and that's a constitutional case which basically found middle ground between a civil and a criminal burden of proof at a point in history when there was no statutory definition. The Illegal Immigration Reform Act amendments take care of that under 8 U.S.C. 1229 C.3.A. Places the burden on the government in deportation to prove by clear and convincing evidence that the aliens removal was charged. And then as to criminal convictions, there is an additional provision showing the laundry list of documents that are admissible. I don't think there's any question that the two sets of documents here are admissible. The question, again, to reiterate, is the weight. Well, it's pretty weird. Excuse me. This is Judge Fletcher. We've pretty clearly decided in Salenberger that a minute order is sufficient proof. True. And your argument is, but we can't understand this minute order. Exactly. There's no Rosetta Stone to explain to us what all the acronyms mean. Now, in most county courts they would decide. But this looks like minute orders we see in virtually all of these cases. I mean, this is pretty much indistinguishable from the minute order in Salenberger. What's missing here, Your Honor, in particular, is we have two convictions, no sentence. That's the first problem. Then there's a series of alphabet soup acronyms that we don't have the guide to, which is normally printed on the back of the minute orders in most counties. I don't know about Santa Clara, but most counties do do that. That simply hasn't been produced by the government, and I would submit that's part of the minute order in order to have a complete document. This one may be certified, but insofar as there's a missing guide to what it means or how we're going to construct it, that is missing as part of the document. Secondly, we are missing a sentencing component. The court's attention has been drawn by a respondent to Cabrera, a new administrative law decision. The problem with Cabrera is that it does not necessarily say that all fines and fees are to be construed as part of a—to meet the 101A-B48A-II component. Cabrera excludes civil fines. It includes a number of other things, and under California law, even under the cases cited in the brief which was filed sometime well before Cabrera, there's a clear indication under California law that you may have fees, assessments, all kinds of matters that could be imposed that are non-punitive. We're left to more or less guess by this minute order exactly what this 100 is for. Apparently it has a pre-printed dollar sign that simply says 100. Well, it seems to me pretty obvious that he pled to count two, and he's got a $100 fine suspended. It's been stayed. What's ambiguous about that? Well, there are— Rather, what's ambiguous? Well, I think the problem is we don't know what the fine is for, and I think even though Cabrera says that this is a uniform standard, even Cabrera recognizes there are other forms of assessments, particularly civil assessments, that stand outside of its own parameters, even the decision in Cabrera. And so we don't know from looking at this without further additional part of the record, which is missing exactly what this—the 100 is for, what the W is for, and what—it says fine stayed, but it's generically under fine slash fees. We don't know about that. Mr. Bennett, I'm not sure that I understand what you mean when you say we don't know what the fine is for. The question is whether it's a fine, as I understand it, and the form checks fine stayed. Just as up above, it has an indication that the fine enforcement is deferred, but that it is a fine certainly appears from the form, does it not? True, but I think Cabrera, if I understand it correctly, basically says that the cost, the fine, must be a form of punishment enforceable by further incarceration or classified as a penalty within the state sentencing scheme. We don't know what this fine is for. If it's part of the state sentencing scheme, then it meets the Cabrera standard. If it's enforceable by a violation of probation, for example, if there's nonperformance, that would be enforceable. But if it's something that simply is referred over to collections, then it's not enforceable by a violation of probation. So without knowing exactly what this fine or assessment is for or whatever it is, because it's simply indicated by acronym, whatever it's for, if we don't know the enforcement mechanism or how it fits in the state sentencing scheme under the evidence before the court, we don't know if there's a sentence that meets the statutory requirements and even meets Cabrera for that matter. All right. Okay. Assuming that this is a fine that qualifies, there's another argument that actually interests me more, and that because it has stayed under the statute as it now exists, this doesn't then qualify as a removable offense. Could you address that? Yes. That issue arises under 1101A48B. In reference to that particular statute, it says if there's a stay only applies to a sentence, excuse me, a term of imprisonment, the language goes, if it's suspended judgment or suspended imposition of sentence, it still counts. But it does not address the stay on the fine. Now, under Ozark, you can't really recover that because the statute, while it uses Ozarkian language, if you will, it prunes off one wing of Ozark and then amends the laundry list and leaves it the only reference you have in the statute is back to a term of imprisonment. That would be a further ground upon which there's no sentence in this particular case since there is a, assuming there is a fine, the fine has been stayed, and the state fine doesn't have an exception drawn up under the capital D provision of the statute. Yeah. That argument, I'll let the Governor, of course, address that one. That argument is at least, as I'm currently inclined, convincing to me. Yeah. Okay. Can you help me understand the relevance of the rap sheet argument, if we were to hold that this, in fact, is not a removable defense? Do we get to the rap sheet argument? I'm not quite sure how it fits in. I'm not sure either. I'm not even sure the rap sheet meets the standard. I think what they're trying to say in the decision is that it was previously convicted of an offense, previously got Federal first offender treatment, or I guess that's the argument. And I'm not quite sure what it is from the BIA decision. But they seem adamant on the fact that he has a prior conviction that he received assuming a Proposition 36 treatment. Now, if that were true, it would be an expunged offense. Then the question would be whether this would be subject to Federal first offender treatment. I'm not quite sure where they're going with it. It's quite clear from Chavez-Perez that the mere availability of Federal first offender treatment wouldn't be grounds to, excuse me, doesn't set aside the conviction for purposes of deportation. I'm probably not answering the question. Well, maybe they can, maybe the government can help us out. You've basically used your time. Let's hear from the government, but we will give you a chance to respond. Thank you. May it please the Court, good morning, Your Honors. I'm Brian Byer on behalf of Attorney General Erica Holder as a respondent in this case. I will try to help. I want to begin by kind of returning this case to the context. The statute, Section 101A48, as it relates to deferred adjudications, addresses the question of at what point in time or in the criminal process a disposition of the deferred adjudication should be viewed as a conviction with sufficient specificity to support a removal charge. In this Court's decision in the Lujan Armendariz case on pages 745 and 746 of that opinion, the Court explains that that's the way the Court understands the purpose of this statute. It says the purpose of the amendment appears to have been to establish the point in time at which a particular type of proceeding results in a conviction for immigration purposes. So the question that this Court faces, viewed from that perspective, is whether the stage of the proceeding memorialized in this minute order meets the definition of a conviction. Now, Judge Fletcher's concern relates to the fine, so I'll address that first. The statute says, I'll return to the language of the statute, if adjudication has been withheld, adjudication of guilt has been withheld, there's two elements. The second one being the judge has ordered some form of punishment, penalty, or restraint on liberty to be imposed. Now, that's happened here. The fact that the Court subsequently staged the fine. What do you mean subsequently? It sounds like they're simultaneous. Well, it doesn't matter, frankly, Your Honor, if it's simultaneous or subsequent. The imposition of the fine occurred. The fact that it was staged doesn't mean that it didn't – it wasn't imposed. Well, I'm not sure that's right. If the Court had not imposed a fine, then, you know, we would not have an argument that there was a penalty or punishment imposed. Oh, sorry. Go ahead. The statute of 1101A48B specifically says with regard to a term of imprisonment that suspension really doesn't matter. It doesn't say that about fines. And the inference I draw is that, well, suspension of a sentence of imprisonment doesn't matter, but a sentence of a fine that's suspended, how can we count that? That would suggest that B is written out. You're automatically going to count whatever was suspended. Well, Your Honor, it's unfortunate the Board didn't have this issue before to address squarely. But let me suggest a different reading of this provision. It's not clear how this provision relates to the imposition and then suspension of a fine or the imposition. You keep saying imposition and then. Why do you keep saying that? Well, I say imposition and suspension. I'm willing to grant the Court's view that it's simultaneous, and I do not mean to be understated. So that's not a problem. Okay. I apologize for my lack of clarity. This statute defines the word conviction for purposes of the INA. And subpart B actually addresses, or at least it appears to address a different issue, which relates to determining what the term of imprisonment is. It says any reference to a term of imprisonment or sentence is deemed to include the period of incarceration ordered, regardless of any suspension. That addresses the question of whether, for example, if, excuse me, if a particular alien is sentenced to five years and then four and a half years are suspended. Of course. I understand that. But Judge Clifton's point is that there's a negative pregnant. That's to say, okay, if it's a term of imprisonment or a sentence with respect to a family, is deemed to include a period of incarceration or confinement, even though there's regardless of any suspension. It doesn't say that it includes a fine regardless of any suspension. So there's a negative pregnant. I mean, that's the argument. I understand that, Your Honor. I guess the additional point is that this provision in its form is a rule of construction that addresses the particular situation. It's not a rule of construction that addresses other situations. And so the statute is. But by negative entrance, it seems to me that it clearly does, because it was necessary to tell us that with respect to confinement, it counts as a conviction irrespective of suspension. That suggests that unless it's specified as it's here with respect to confinement, it doesn't count. Because they say specifically that they thought it necessary to tell us that this does count with respect to positions of conditions of imposition of confinement versus suspended. Your Honor, let me separate out two issues here. The one that's addressed in B at least more obviously is the question of the term of imprisonment. The issue as to whether there is a sentence imposed, which is the issue for subpart A, doesn't depend on whether there was — doesn't depend on the length of the sentence. It just has to be that there's a form of punishment, penalty or restraint ordered to be imposed. I'm not sure that that quite meets Judge Clifton's, Judge Fletcher's point. I don't understand that anybody quarrels with the proposition that A2, which speaks about the judge ordering some form of punishment, penalty or restraint on the alien's liberty, that that would include the imposition of a fine. The question then is whether under B, which talks about the situation of a suspended sentence and confines its attention to a term of imprisonment, period of incarceration, saying suspension doesn't help the alien, does that not necessarily lead one to think that in the more capacious reference in A2, the suspension of a non-incarceratory sentence takes it out of the statute? Your Honor, that's certainly one way to read these provisions. As I mentioned, we don't have the benefit of the Board's explanation on this. And if the Court concludes that the statute is ambiguous on this point, then really the proper thing to do under principles of administrative laws reflected in the Ventura case is to permit the Board to address it in the first instance. I'm suggesting to you, beyond the textual question, the government's essential position here is that Mr. Rattuta should be deported for an offense which a State court found warranted a $100 fine on the term suspended or deferred entry of that judgment. So that's a rather draconian view, is it not? And wouldn't it be more appropriate under those circumstances and with a recognition that there are principles of lenity that apply in the immigration context, wouldn't it be more appropriate to read the statute for what it says and exclude what it doesn't say? Well, Your Honor, the purpose of the definition of conviction has to be taken into account in determining how it should be read. And this Court's decision in Lujan and the Board's decisions in other cases reflect the purpose that Congress had in mind in codifying the definition of conviction here. It was much different. The purpose was to broaden the Board's prior approach in determining whether or not a particular disposition of a criminal case should be treated as a conviction. The Board previously had made the issue depend on whether or not the criminal defendant would have an opportunity to further litigate the issue of whether or not he was guilty or innocent at a later time. Congress said that it did not want to have that kind of a rule. It wanted to broaden the use of these kinds of dispositions, including deferrals of adjudication. And it would be the Board should address how the effectuating of Congress's purposes here would be consistent or not consistent with this reading. Well, it's taken out the requirement for punishment and just said we don't care if the Court, the State Court decided to suspend everything, make it a deferred. Once there's been an adjudication of guilt, that's the end of the question. But that's not how the statute reads. The two-eyes provision is still there. The Court has ordered some form of punishment. And immediately following that, you have this discussion of a term of imprisonment. Now, I understand that Congress could set it up in a way that suspension of a fine, we still look at the underlying amount of the fine, or the fact that there was a fine even if it was suspended or deferred. But that's not what the statute talks about. So although I guess I understand the argument as to how Congress might have intended something, I don't see if Congress intended that, why they would have made the change in the way they made it. Why was B referred only to term of imprisonment with no reference to a monetary penalty? Well, Your Honor, the subpart B of this definition is addressing, it's not a subpart of A2. It's kind of stands in. Well, it's a subpart of 48. Well, that's correct, Your Honor. So it's not like they're, we're looking at entirely separated sections and trying to apply one to the other. They are in direct succession. I mean, you can't read the statute as a whole without having one fall immediately upon the other. So to suggest that, well, it's meant for an entirely different purpose, it doesn't speak to what 2I says. Yeah, that's tough. And it also suggests, okay, if we're entirely separate, then maybe punishment to be imposed leaves the door open to an argument that suspended term of imprisonment should be disregarded as well because B doesn't refer to that. Well, now I've got trouble with that kind of argument coming from the petitioner someplace. They are immediately succeeding one another, right next to each other. So when I get to the non-imprisonment punishment, it's not strictly against the government. I'd have trouble with the petitioner argument with regard to imprisonment, but I've still got my problem with the government's position with regard to a non-imprisonment punishment. If it didn't cause the guy to reach into his pocket and pay money, and that appears to be my reading of the amendment order, then how does it qualify as a conviction? Well, Your Honor, there's an additional point as well, and I see that I'm well over my time, but I'd like to address this. We want to get this right, so. Okay. I appreciate it, Your Honor. The additional policy consideration that needs to be brought into account here is that Congress did not want to have the variations among the different ways that States handle these sorts of crimes to determine the immigration consequences. Congress wanted uniformity, and that was what the Board had sought to achieve before Congress enacted the statutory definition. And obviously, by enacting the statutory definition, Congress was expressing a desire for a broader, you know, equally uniform policy. And in this case, I mean, what the statute provides, I mean, because the minute order is not transparently clear on this, you know, I can only presume, but I think based on reasonable inferences from the record, that this case probably was handled under Proposition 36. I mean, the complaint says Proposition 36 eligible, and it reflects there's a deferred entry of judgment given the timeframe. It appears that that's what was going on here. Now, Proposition 36 reflects California's judgment that the proper way to deal with drug offenses is through diversion programs like this one. I mean, the difference, as I understand it, what Proposition 36 did was it broadened the case to people like Mr. Rotuda, who has multiple drug convictions. The prior diversion program was available, I think, just one time. And California's policy may very well be the proper way to address all of the issues surrounding the misuse and abuse of illegal drugs among all the people of California, but that's a different issue than the federal immigration policy, which, as this Court is aware through its opinions, is a, you know, is a longstanding importance. Could you get to the point? I don't understand where you're going with this. Where I'm going, Your Honor, is that California's judgment as to how it is that an illegal drug charge should be disposed of, whether it's through a diversion with a fine or a diversion with a probation, is a different issue from whether or not there is a conviction. As long as the statute requires punishment and punishment is left to the State. Well, Your Honor. Congress could have accomplished what you're talking about in a different way. But this is what Congress has given us. And I hear a policy argument that you've got to disregard what California wants to do because the statute requires some form of punishment. Well, Your Honor, let me point out punishment, penalty, or restraint. And in Cabrera, which we haven't talked about yet, the Board concluded that the assessing of fees, court fees. That were actually paid. And we have no indication that I can see from the minute order that this person was required to pay anything. Well, Your Honor, that's true. I mean, it's not clear whether or not. Let me ask you this. You mentioned Ventura. I'm not sure how far Ventura extends. I mean, I understand why you're saying it. Because when the BIA decides this case, we don't have the statute. Instead, we just have the what's-the-name-of-the-case, the matter of Oscok. So it's deciding under a different legal criterion than we have now under the statute. And so you're saying that we are obliged to send this back to the BIA so they can, in the first instance, tell us what they think the statute means? That's your Ventura argument? Yes, Your Honor. Why does Ventura apply here? I understand it applies to various sort of factual arguments not reached and so on. Let's say the BIA might have reached one argument. That was enough for its purpose as we reverse on that argument. That leaves the next argument not reached. We can't decide it. We send it back to them and so on. This is a different proposition from what Ventura itself involved. Why does Ventura apply to this? Well, Your Honor, Ventura reflects the principle that the Court can't address an issue that the agency itself has not addressed. I mean, if you look at the Gonzales v. Thomas. Now, you're mentioning Ventura here for the first time. You didn't read Ventura. Is that right? Well, that's right, Your Honor. But this issue was not raised. Did you just think of it now? Pardon me? Did you just think of it now? Well, the argument really wasn't presented in these terms prior to this time. What do you mean prior to this time? Prior to you getting the blue brief, you mean? No. I'm sorry. Prior to the case being decided by the Board. I understand that. The Board does not get blue briefs. No, I've been making a different point. You got a blue brief. This question that we've been discussing here over the last several minutes was clearly there. And in response, you say nothing about Ventura. You now say something about Ventura. Yes, Your Honor. Whoever wrote the red brief doesn't agree with you. I'm afraid it's a corporate evil, right? That's right. But as I started to discuss Subpart B, it's our position, this is a rule of construction regarding the term of an imprisonment and determining what the length of an imprisonment is rather than addressing the question. Now, if we were to – oh, sorry. Go ahead. I mean, if the Court rejects that on the plain meaning, then it's concluded that the statute actually is ambiguous here. We did not take the position that it was ambiguous, and so we didn't think there was anything under Ventura for the Court to – for the Board to do on that issue. Go ahead, Your Honor. If we could go back to the text of the statute for a moment and compare it with Oscok, which I think you properly pointed out Congress was trying to enlarge on as a general matter. Yes. In Oscok, the second paragraph talks about, I mean, number two, the situation in which the judge has ordered some form of punishment, penalty or restraint on the person's liberty. And that language is indistinguishable from the language in A2 of the statute, punishment, penalty or restraint on the alien's liberty. Now, I think we have agreed already that a fine is – fits within the category of punishment, penalty, assuming it's – and the question is then whether – what happens if it's suspended. Let me take you back to Oscok. Oscok undertakes to define what's meant by punishment, penalty or restraint on the person's liberty. And, of course, it includes a fine, but included – but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work release or study release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges. Suppose the penalty imposed had been suspension of a driver's license. If the judge then deferred entry of that judgment, suspended the suspension of a driver's license, is it to be understood that the government would take the position that that form of suspended sentence would trigger the statute? Your Honor, I don't know the answer to that question. I'm not familiar with a board precedent that addresses that issue. Certainly the way that the board has written Oscok, it's broad enough to refer to, you know, nonessential privileges, whether a driver's license is a nonessential privilege, I think is an important issue for the board to address. Oscok itself is not the operative standard any longer. I mean, it's relevant. But the statute – the question is really, you know, whether or not this is – whether the suspension of the driver's license is a form of punishment or restraint on liberty under the statute. The statute doesn't address that, and so the board really needs to address that under a Chevron. It would be surprising, would it not, if Congress, undertaking to do what you said it was trying to do in this statute, take Oscok as the basis and then enlarge on it, took the very language from Oscok, form of punishment, penalty, or restraint on the alien's liberty, and gave it a narrower reading than Oscok had given it in the second paragraph. It would be surprising, Your Honor, but it's not – I mean, that's a call for the board and the Attorney General to make, as the delegates of the authority here, to construe the statute. Here's the problem. I'm working – I'm still chewing on this Ventura, and I'm a little slow coming to the party on Ventura, because until you stood up and mentioned it, it had not even occurred to me that that was an issue. It hadn't been argued about it. So, well, I'm now getting the dates. Oscok, of course, precedes the amendment of the statute. The statute is designed to deal with Oscok. And what's the date of the amendment of the statute? Is it 1996? 1996, Your Honor. And the decision by the board is 2004. So this statute had been in effect for 8 years by the time the board decides it. And you're asking us to send back to the board so that it can construe a statute it had before it when this appeal was before it? The argument was made directly to the board, and the board rejects it, relying on Oscok. I think they have decided that this is how – this is what this means. I don't see any need for a Ventura remand. They've addressed the question, and they're either right or they're wrong. But, Your Honor, I may be wrong about this, but I think that the brief to the board did not make this argument based on subpart B. And the argument that Congress, in enacting this rule of construction, actually intended to say something about the staying of a fine. And have you argued in your brief that this argument has been waived, not making it to the BIA? We did not make that argument, Your Honor. Nonetheless, I mean, whether or not the argument has been waived is a different issue from whether under administrative law principles the board should be permitted to address it in the first instance. I mean, the board's decision does acknowledge that the – that the fine was stayed. I mean, it says – the record indicates that the fine, though stayed, was imposed as a result of the guilty plea. Right. So, I mean, the board's language here tracks the language in 48A2. Well, and the board specifically cites the section of the statute, although it says 101 instead of 1101. And I guess 48A sub 2, it just doesn't get all the way to B. But it's clearly got the statute in front of it. It's reading the darn statute. Well, that's right, Your Honor. But, I mean, it's – as I mentioned, I mean, the court has to decide whether or not sub part B is relevant here. I mean, the board reasonably read the statute. Let me ask you that. I think we've gone over that ground a lot. Let me ask you one last question, at least for me a last question, or focus, or maybe there are two more questions. But what's the rap sheet argument have to do with anything? I don't understand how it fits in. I'm not sure how that relates to this issue, Your Honor. How does it relate to this case? The board – well, I'll back up. The DHS submitted the rap sheet among a bunch of exhibits. During the administrative proceeding, the immigration judge said that the rap sheet doesn't count for any issues regarding removability, which is the only issue here. The board did not rely on the rap sheet. The board mentioned at the end of the – of its decision that there's evidence in the record that the petitioner had been previously convicted of a drug violation. And its sites exhibit six through eight. Correct. Which does not – which is not limited to just the rap sheet. But it includes the rap sheet. Well, true, Your Honor. I read and reread this paragraph in the BIA's order. I have no idea what it's telling me. What this is doing – this addresses the separate argument from Petitioner that was, I think, listed in the notice of appeal to the board, but not listed in the brief to the board, which was that the fact that the conviction was expungeable under the Federal First Defenders Act meant that it couldn't be used as a ground for deportability. Maybe I can short-circuit it. If we were to hold – I understand you don't want us to, but if we were to hold that a $100 staid fine doesn't qualify as a conviction that will support removal, do we need to reach whatever was going on in this paragraph? No, Your Honor, because the issue here was simply – The argument by Petitioner as to why this crime should not be treated as a removable offense. Now, if I might have a moment to sum up. For the reasons that we've given in our prior written submissions, the Court should deny the petition. But if the Court rules otherwise, it should remand the case for further consideration, including addressing the issue the Court has raised, if necessary, and also addressing the remaining charges of removability. And as the Court knows, we also submitted a motion to remand reflecting that DHS, subsequent to this removal proceeding, obtained additional documentation relating to this conviction and that the Court's remand, if it remands the case, should permit consideration of that and whatever other relevant evidence is appropriate for submission at that time. Okay. Thank you. Mr. McMahon, I'm sorry to keep you waiting so long. Would you like to respond? Just briefly, Your Honor. The motion to reopen – remand in the administrative proceeding has been ruled on and denied by the Board of Immigration Appeals. It's apparently calculated to create a further record under the vacated decision of Schnellenberg. But that's been denied. And do we have a record of that in the material that's in front of us? It's not part of the administrative record, obviously, because it just happened two weeks ago. However, I could make a motion to augment the record to submit it if the Court so desires. My guess is that you and your adversary can get together and just send us a submission just to update us on what's going on. And if you could do that, that would be helpful. That would be fine, Your Honor. Secondly, Oscock – the Court's already addressed the issue, but I just mention in passing that Oscock does – Congress was obviously aware of it because the language stresses statute. They prune it and they cut off the third wing of Oscock and then add the subsection B. So I don't think there's any question as to what they were applying or what they were addressing when they drafted the statute. Finally, last point. I said that this case should not go ventura, especially in light of the motion to deny the administrative motion by the BIA itself. It's already indicated it's not interested in reopening the case at this juncture while the case is pending in front of the Court of Appeals. And on that basis, I submit it. Okay. Thank both sides. I'm sorry to keep you for so long, but there are enough complications. For our purposes, it was worth doing. The case of Matuda v. Holder is now submitted for decision. That completes our argument calendar for this morning, and we are now in adjournment. Thank you. Thank you. Thank you. Thank you. Thank you. lie you    me me me me me me me me me me my fan my fan my fan my fan fan fan fan fan      fan fan fan fan fan fan fan fan fan
judges: Pollak, Fletcher W. , Clifton, Pregerson, Reinhardt, Tashima